IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JILL KIMBERLY BANDRAPALLI, | No. 88319-4-I |
| Respondent, | |
| v. | DIVISION ONE |
| NANEE VINOD BANDRAPALLI, | |
| Appellant. | UNPUBLISHED OPINION |

CHUNG, J. — On December 28, 2023, a trial court entered a final parenting plan between Nanee Vinod ("Vinod") and Jill Bandrapalli.[1] Vinod submitted a motion to vacate, which the court denied as partially untimely and partially unmeritorious. The trial court also awarded Jill attorney fees in association with defending against the motion to vacate. Vinod requests that this court "reverse the finding of untimeliness, remand for proper consideration of the motion's merits, and vacate the fee award imposed in error." We affirm the court's orders denying the CR 60(b) motion and the motion to reconsider. However, we reverse the award of attorney fees and remand to the trial court to determine whether to award fees under RCW 26.09.140.

BACKGROUND

On December 28, 2023, a court entered a final parenting plan following the dissolution of Vinod and Jill's marriage. Vinod filed a motion to reconsider, which was

---

[1] As the parties share a last name, for clarity, we refer to them by their respective given names.

denied January 16, 2024. Through counsel, Vinod then filed a notice of appeal on February 20, 2024, which this court denied as untimely.

On December 13, 2024, Vinod reserved a hearing date of January 2, 2025, with the Ex-Parte and Probate Department at King County Superior Court. Upon making this reservation, he was emailed instructions that stated "This email does not guarantee that your hearing will go forward. You must ALSO complete the following steps, or your hearing will be removed from the calendar." The instructions detailed how to file a "Notice of Hearing," serve the other party with documents, and submit proposed orders. On December 18, 2024, Vinod electronically filed a "Notice of Hearing" indicating that the purpose of the hearing was to vacate the "Parenting Plan Judgement [sic] under CR60." On December 26, 2024, Vinod reserved another hearing, for January 6, 2025, with the Ex-Parte and Probate Department and received emailed instructions. He electronically filed another "Notice of Hearing" on December 27, for the same purpose as the previous "Notice of Hearing." On December 30, 2024, a court commissioner denied the "Proposed Order to Vacate Judgment" as "premature," noting the "Proposed Order to Show Cause [did] not have [a] hearing date and time on it."

On January 14, 2025, Vinod electronically filed documents to the "Superior Court Clerk," including a "Motion to Vacate Judgment and Modifying Parenting Plan Pursuant to CR 60" alongside the parenting plan, a declaration in support of the motion, a "custody journal" and "emails," and a "Notice of Court Date" before the "Chief UFC [Unified Family Court] Judge" for January 28, 2025. Jill filed a responsive memorandum in opposition to the CR 60 motion, arguing—among other things—that the court should award her attorney fees under RCW 26.09.140. The court held a hearing on the merits

2

of the motion to vacate on February 24, 2025, and issued its order denying the motion that same day. First, it found that Vinod's motion did not "constitute good cause to vacate the judgment and modify the parenting plan" and, further, Jill would be prejudiced "if the Judgment is Vacated." Second, it determined that Vinod's claims as they relate to CR 60(b)(1) and (3) were time barred and that the "other challenges under CR 60(b)(4) and (11) are denied." It further ordered that Jill's motion for attorney fees was reserved pending further briefing because Jill did not argue intransigence in her brief but raised the issue at the hearing.

Vinod filed a motion for reconsideration on March 10, 2025, and the court denied the request. The court granted Jill's motion for attorney fees under RCW 26.09.140; while it declined to find intransigence by Vinod, it determined that Jill demonstrated "she does have a [financial] need and is unable to pay her legal expenses." Vinod timely appeals to this court.

DISCUSSION

Vinod contends that the court erred in determining a portion of his motion to vacate is time-barred and that his remaining arguments are non-meritorious. He also challenges the trial court's award of attorney fees to Jill because it did not consider his ability to pay.

I. CR 60 Motion

Vinod appeals the trial court's order denying his CR 60(b) motion and the order denying his motion for reconsideration, not the underlying final parenting plan. The exclusive procedure to attack an allegedly defective judgment is by appeal from the judgment, not by appeal from the denial of a CR 60 motion. Bjurstrom v. Campbell, 27

3

Wn. App. 449, 451, 618 P.2d 533 (1980). Accordingly, we review only "the propriety of the denial" of the CR 60 motion and not the alleged "impropriety of the underlying judgment." Id. at 450-51.

We review a superior court's ruling on a CR 60(b) motion and a motion for reconsideration for abuse of discretion. Jones v. Home Care of Wash., Inc., 152 Wn. App. 674, 679, 216 P.3d 1106 (2009) (motion to vacate); Rivers v. Wash. State Conf. of Mason Contractors, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002) (motion for reconsideration). "Discretion is abused where it is exercised on untenable grounds or for untenable reasons." Jones, 152 Wn. App. at 679.

A.  Timeliness

First, Vinod contends that the "trial court erred in concluding that [his] CR 60(b)(1) and (3) motion was untimely by misapplying CR 5(e), LGR 30(b)(4), and LCR 5(d), failing to recognize that submission via Ex Parte via the Clerk constitutes filing under applicable rules."[2] We disagree.

Regarding timing, CR 60(b) provides that "[t]he motion shall be made within a reasonable time and for reasons (1) [mistakes or irregularity], (2) [erroneous proceedings,] or (3) [newly discovered evidence] not more than 1 year after the judgment, order, or proceeding was entered or taken." Vinod "does not dispute that the motion [was] later submitted on the docket on January 14, 2025." Rather, he contends

---

[2] Vinod later asserts that "LGR 30(b)(4) expressly states that an electronically submitted document 'shall be considered filed when it is received by the clerk.' "

King County Superior Court Local General Rule (LGR) 30 controls mandatory electronic filing and service, and subsection (b)(4) states that "Attorneys shall electronically file (e-file) all documents using the Clerk's online eFiling application unless this rule provides otherwise. Non-attorneys are not required to e-file but may do so." LGR 30(b)(4)(A). Accordingly, LGR 30(b)(4) does not support Vinod's contention that the trial court misapprehended what qualifies as "filing" and thus erred.

that "[t]he issue on appeal is not whether the motion later appeared on the docket on January 14, 2025, but whether [his] December 28, 2024 submission to the clerk via Ex Parte via the Clerk constituted a 'filing' for purposes of CR 60(b)."

The trial court held that the CR 60(b)(1) and (3) claims were time-barred, and in its order denying Vinod's motion for reconsideration, the trial court elaborated on its reasoning and why Vinod had failed to comply with court procedures for filing. As the court noted, CR 5(e) controls service and filing of pleadings and other papers. "Filing" is defined as:

> The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court, except that the judge may permit the papers to be filed with him or her, in which event the judge shall note thereon the filing date and forthwith transmit them to the office of the clerk. . . . The clerk may refuse to accept for filing any paper presented for that purpose because it is not presented in proper form as required by these rules or any local rules or practices.

As the trial court further noted, King County Superior Court Local Civil Rule (LCR) 5(d) specifies that "[n]o motion for any order shall be heard unless the original documents pertaining to it have been filed with the Clerk."

"The purpose of filing is to deposit the document in a public place so that it may be seen and examined by any person interested therein." Malott v. Randall, 83 Wn.2d 259, 262, 517 P.2d 605 (1974) (holding under CR 58, "delivery to the clerk for filing" means judgments must be lodged in the clerk's office to be deemed "entered"). Given the "plain language of the rule," the court determined that Vinod's submission to "Ex Parte via the Clerk" was not equivalent to "an actual filing." It specified that it could not "make such a leap," since "[u]nder CR 5, a Court cannot consider a matter unless the documents have been filed."

5

The trial court correctly interpreted and applied the applicable law. Contrary to Vinod's contention, the requirement of filing the actual motion to vacate is distinct from the procedural requirements of scheduling a hearing on such a motion. CR 5 governs filing of pleadings and other papers related to Vinod's CR 60 motion and required them to be submitted to either the Clerk of the court or the judge presiding over the matter. Because the parties' dissolution case was closed, the procedure set out in King County Superior Court Local Family Law Rule (LFLR) 5 applied. LFLR 5 dictates how to schedule motions on family law proceedings and specifies that when

> final orders have been entered, the order to show cause on the motion to vacate shall set the return hearing date before the Respective Chief Judge [RCJ] except . . . [i]f it is a motion to vacate final orders entered after a trial, the order to show cause shall set the return hearing before the trial judge. If that judge has left the court, the return hearing on the order to show cause shall be scheduled before the [RCJ].

LFLR 5(e)(2)(B)(i). As the trial court explained,

> [Vinod] ignored LFLR 5 instructions on how to file a motion to vacate final orders on closed cases. *See*, LFLR 5(e)(2)(B). According to local rules, any hearing should be noted before the Respective Chief Judge (RCJ). Instead of getting an order to show cause, that properly noted the hearing with the RCJ, which would have been the Chief UFC judge, he directly noted his motion in Ex Parte. This is improper. . . . The assigned judge would have been the judge identified in LFLR 5, ie the RCJ owing to the fact that [the judge who oversaw the original trial] is no longer on the bench.

6

Despite being informed how to comply,[3] Vinod nevertheless did not submit the motion to vacate to either the Clerk or the Chief UFC judge until January 14, 2025.[4]

Under CR 5(e) and LCR 5(d), Vinod failed to file his CR 60 motion within one year of the challenged order. Accordingly, the court did not err when it denied his motion based on CR 60(1) and (3) as untimely.

B.  CR 60(b)(4)

Next, Vinod posits that the "trial court abused its discretion in denying [his] CR 60(b)(4) motion where the judgment was tainted by fraud on the court, materially false allegations, and a procedurally compromised parenting evaluation." Again, we disagree.

Vinod contends in his underlying CR 60 motion that

The Petitioner knowingly misrepresented material facts to the Parenting Evaluator and the court, fabricating allegations of coercive control and financial abuse.

[The Parenting Evaluator's] reliance on these claims without independent verification, selective approach, and the omission of material evidence constitutes misrepresentation and procedural misconduct, undermining the integrity of the proceedings and the resulting judgment.

---

[3] After the commissioner denied Vinod's CR 60 motion because the "Order to Show Cause" lacked a "hearing date and time on it," Vinod emailed the Ex Parte Department to determine which judge he must contact to schedule his motion. One of the bailiffs he contacted emphasized that his case was currently closed and had no active case schedule, specifying that he would need to note his motion before the Chief Judge UFC.

[4] As the trial court explained,

Even if [Vinod] had submitted a proposed order and supporting documents to the Ex Parte Department, it would have been rejected because the underlying motion was not in the legal file. Indeed, the underlying motion did not make its way into the legal file until well beyond the deadline[,] on January 14, 2025. In sum, a submission of supporting documents, especially working papers, to the queue is not the same thing as filing a document with the clerk's office.

In his brief on appeal, Vinod argues the "judgment was voidable due to fraud on the court." First, he states that there were "irrefutable contradictions" in the "central premise advanced by [Jill] . . . that she was forced to flee the martial home due to coercive control." Second, he asserts further that Jill "fabricated allegations of sexual coercion," proving she "constructed a false narrative of sexual coercion for the evaluator." Third, he argues that "[f]raud also infected the court's assessment of international travel risk" because Jill claimed he had "close ties with the Prime Minister of India." He contends "the court adopted travel restrictions based on this fabricated risk." Fourth, he asserts that "[m]ost egregiously, the trial court disregarded its own commissioner's prior findings that [Jill] had 'historically shown a willingness to be dishonest for advantage.' "[5] Finally, he argues the "parenting evaluation was procedurally corrupt, rendering the judgment it influenced unreliable," since it incorporated coercive-control allegations despite the previous domestic violence protection order being denied and it "ignored exculpatory evidence, failed to interview key witnesses, omitted evidence of [a] 'Costa Rica' trip contradicting fear narratives, and failed to assess the children's understanding of stated preferences, contrary to RCW 26.12.175(1)(b)."[6]

---

[5] In denying a prior domestic violence protection order request in December 2022, the commissioner had stated, "Historically, *both parties* have shown a willingness to be dishonest for advantage." (Emphasis added.)

[6] RCW 26.12.175 generally controls the appointment of a guardian ad litem (GAL), and states specifically:

> The [GAL]'s role is to investigate and report factual information regarding the issues ordered to be reported or investigated to the court. The [GAL] shall always represent the best interests of the child. [GALs] under this title may make recommendations based upon his or her investigation, which the court may consider and weigh in conjunction with the recommendations of all of the parties. If a child expresses a preference regarding the parenting plan, the [GAL] shall report the preferences to the court, together with the facts relative to whether any preferences are being expressed voluntarily and the degree of the child's understanding. The court may require the [GAL] to provide periodic reports to the parties regarding the status of his or her investigation. The [GAL] shall file his or her report at least sixty days prior to trial.

CR 60(b)(4) states that a "court may relieve a party . . . from a final judgment, order, or proceeding for . . . [f]raud (whether . . . intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." "The rule is aimed at judgment unfairly obtained, not factually incorrect judgments." Sutey v. T26 Corp., 13 Wn. App. 2d 737, 756, 466 P.3d 1096 (2020).

Furthermore, "the fraudulent conduct or misrepresentation must *cause* the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." Lindgren v. Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). "[M]isconduct or misrepresentation need not be intentional but may merely be careless." Hor v. City of Seattle, 18 Wn. App. 2d 900, 912, 493 P.3d 151 (2021). However, mere allegations of fraud or impropriety are insufficient to warrant relief. See Allison v. Boondock's, Sundecker's, & Greenthumb's, Inc., 36 Wn. App. 280, 285-86, 673 P.2d 634 (1983) (reasoning that mere use of civil rules to party's advantage regarding filing deadlines did not qualify as "unfair or deceptive" when they properly served the other party); Bergren v. Adams County, 8 Wn. App. 853, 857, 509 P.2d 661 (1973) (denial of CR 60(b)(4) motion proper when a party argues fraud, but the record does not support the contention).

"The party attacking a judgment under CR 60(b)(4) must establish the fraud, misrepresentation, or other misconduct by clear and convincing evidence." Lindgren, 58 Wn. App. at 596. A trial court must find that a party established the nine common law elements of fraud. See In re Marriage of Maddix, 41 Wn. App. 248, 252, 703 P.2d 1062 (1985) ("if, on remand, the court does find fraud, findings and conclusions with respect

---

RCW 26.12.175(1)(b).

9

to each of the nine elements are required.").[7] A party alleging only misrepresentation or misconduct does not need to show the fraud elements. Id.

Here, the trial court correctly determined that Vinod failed to show that fraud, misrepresentation, or misconduct resulted in an unfairly obtained judgment. First, Vinod fails to provide analysis or identify evidence of the nine essential elements of fraud for his claim that Jill fraudulently presented evidence of coercive control. Instead, he makes the conclusory assertion that the trial court's dismissal of his claim was "clearly erroneous" because he "presented a prima facie case of fraud on the court," without further elaboration.

Similarly, as to Vinod's complaint that Jill obtained travel restrictions due to her fraudulent assertion that Vinod had ties to the Prime Minister of India, he again fails to engage with the required elements of a fraud claim.[8] Additionally, his argument that Jill fraudulently told the court he sexually coerced her throughout the marriage is unavailing

---

[7] The essential elements include:

"(1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage."

Sigman v. Stevens-Norton, Inc., 70 Wn.2d 915, 920, 425 P.2d 891 (1967) (quoting Webster v. L. Romano Eng'r Corp., 178 Wash. 118, 120, 34 P.2d 428 (1934)).

[8] Moreover, Vinod does not show that even if Jill did fraudulently assert this before the court, it resulted in unfair travel restrictions. The parenting plan states the travel restrictions as such:

3. [Vinod] may not travel outside the State of Washington with the children until completion of DVIT [Domestic Violence Intervention Treatment] and DV [Domestic Violence] Dads.

4. International travel (other than Canada and Mexico) shall require written permission of both parents or a court order, and neither parent will, absent a court order, travel to any countries with the children that are not signatories to the Hague Convention.

because the court explicitly identified in its findings that there was insufficient evidence to conclude Vinod exhibited such behavior. Accordingly, he cannot show the statements resulted in an unfair judgment.

Finally, his last two fraud contentions—that the court disregarded prior commissioner findings and that the parenting evaluation was procedurally corrupt because it incorporated allegations of coercive control and ignored additional evidence—are unsuccessful because Vinod fails to discuss how the fraud, misrepresentation, or misconduct of an *adverse party* caused the entry of the final parenting plan. Instead, these arguments focus on the alleged failures of the court or the evaluator and the resulting parenting plan.[9] Again, the purpose of CR 60(b)(4) is to challenge unfairly obtained judgments, not judgments that are factually incorrect.

The trial court did not abuse its discretion when it concluded that "there is no basis under" CR 60(b)(4) "to vacate judgment."

C.  CR 60(b)(11)

Vinod also argues that the trial court abused its discretion in refusing to grant relief under CR 60(b)(11), despite the presence of extraordinary circumstances, including "fraud, bias, and the denial of a meaningful opportunity to be heard."

CR 60(b)(11) allows relief from judgment for "[a]ny other reason justifying relief." However, the use of CR 60(b)(11) is confined to situations involving extraordinary circumstances not covered by other sections of the rule. Barr v. MacGugan, 119 Wn. App. 43, 46, 78 P.3d 660 (2003); Hammack v. Hammack, 114 Wn. App. 805, 809-10,

---

[9] To the extent this argument is predicated on Jill's alleged fraud, the claim is unsuccessful because, as discussed above, Vinod fails to show the essential elements to establish the claim.

60 P.3d 663 (2003). Moreover, the extraordinary circumstances must relate to " 'irregularities which are extraneous to the action of the court or go to the question of the regularity of its proceedings.' " Flannagan v. Flannagan, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985) (internal quotation marks omitted) (quoting State v. Keller, 32 Wn. App. 135, 141, 647 P.2d 35 (1982)).

Many of Vinod's CR 60(b)(11) claims alleged circumstances covered by other sections of the rule. To the extent Vinod's allegations relate to fraud, they are claims under CR 60(b)(4), not CR 60(b)(11).[10] And to the extent Vinod alleges that "critical evidence was never disclosed," such a claim would fall not under CR 60(b)(11), but under CR 60(b)(3)—"[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial."[11]

Vinod also discusses an alleged discrepancy between a statement made by the court that oversaw his dissolution case and a finding in the final parenting plan. In the context of finding Vinod asserted control over Jill by scripting and editing emails "in 2016 in an attempt to get her to push for the criminal [DV] charges against [Vinod] to be dropped," Vinod notes that the court confused where the emails were being sent.[12] However, to the extent there was confusion, the court's finding does not incorporate

---

[10] Vinod repeats arguments from his CR 60(b)(4) analysis, contending that the parenting plan rests on a "fraudulent foundation" due to Jill's contradictory statements. He also reasserts the evaluation "was a report authored by an evaluator who demonstrated confirmatory bias and disregarded key exculpatory and judicially acknowledged evidence." In conjunction with this point, he argues that the "children's best interests demand a fair and accurate process, which was denied" because the evaluator failed to "assess their level of understanding, failed to investigate their stated preferences, and imposed a narrative unsupported by evidence." He again asserts that "[r]estrictions were imposed on [him] based on fabricated or misrepresented claims."

[11] As discussed above, the court properly held that Vinod's CR 60(b)(3) claims were time-barred.

[12] Vinod relies on this statement by the court: "I apologize, I may have misspoken, but I just want to make sure I'm clear on this, and it is on record, but the email I think was to her lawyer, and not to the prosecutor, is that correct?" Vinod's attorney responded affirmatively.

incorrect information. Rather, it finds simply that Vinod exercised control over Jill regarding the emails. Vinod fails to establish that this situation demonstrates extraordinary circumstances that are extraneous to the action of the court or go to the irregularity of the proceedings. Therefore, the trial court did not err when it determined that Vinod did not provide "any other compelling reason that would justify relief from [the trial court's] final orders."

## II. Attorney Fees

Vinod also contends that the trial court "erred in awarding attorney's fees under RCW 26.09.140, where (a) no finding of intransigence was made, (b) [he] demonstrated financial hardship through documented submissions, and (c) the underlying denial order was legally erroneous."

Jill requested attorney fees based on two separate theories of relief: (1) relief under RCW 26.09.140, which permits the court to award fees based on one party's need and the other party's ability to pay, or (2) Vinod's intransigence. Specifically, RCW 26.09.140 provides that

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith.

The award contemplated under this statute "rests with the sound discretion of the trial court, which must balance the needs of the spouse requesting them with the ability of the other spouse to pay." Kruger v. Kruger, 37 Wn. App. 329, 333, 679 P.2d 961 (1984).

"We review a grant or denial of attorney fees for abuse of discretion." Freeman v. Freeman, 169 Wn.2d 664, 676, 239 P.3d 557 (2010). "A trial court abuses its discretion

if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "A court's decision . . . is based on untenable grounds if the factual findings are unsupported by the record" or "it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." Id. at 47.

In its order on attorney fees, the court reasoned:

> [Vinod] was provided the opportunity to respond to [Jill]'s request for attorney fees. The Court set a briefing schedule on this issue to provide the time for such evidence. *[Vinod] failed to provide any such documentation to the Court.* Whereas, [Jill] did provide supporting financial documentation. In support of her request, [Jill] provided a financial declaration . . . and additional financial documentation, filed under seal . . . This evidence demonstrated that she does have a need and is unable to pay her legal expenses. The Court awards fees under RCW 26.09.140.

(Emphasis added.) The court also concluded that although the issue of intransigence was "an exceptionally close call," it did not make a finding of intransigence at that point in time.

We conclude that the trial court abused its discretion because its decision was based on untenable grounds. The court stated that Vinod "failed to provide any such documentation" regarding the issue of attorney fees. However, that fact is unsupported by the record. In support of her motion for attorney fees, Jill submitted a financial declaration, a brief, her declaration discussing her financial need and Vinod's ability to pay, and her counsel's declaration with a "summary of the fees incurred in having to respond to [Vinod's] Motion to Vacate." In response, Vinod submitted a brief "opposing [Jill's] motion for attorney fees" as well as his declaration that disputed Jill's need and raised his inability to pay, attaching documents such as "bank statements;

14

Subcontractor correspondence; Rent receipts; [and a] Gratitude email from [Jill] regarding pre-COVID financial support."

Because the court incorrectly stated Vinod had not submitted documentation concerning his financial resources, it ordered an award without considering Vinod's ability to pay. This was in error. We remand to the court to consider the full record, including Vinod's submissions, and to determine whether to award attorney fees under RCW 26.09.140.

Separately, Jill requests fees on appeal pursuant to RAP 18.9, arguing Vinod's appeal is frivolous. Under RAP 18.9(a), a party is subject to sanctions if they file a frivolous appeal. As this court has explained, "[a]n appeal is frivolous if there are no debatable issues on which reasonable minds might differ and is so totally devoid of merit that there is no reasonable possibility of reversal." In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013). Given that we are granting relief to Vinod on the issue of attorney fees based on the court's erroneous analysis, his appeal was not frivolous, and we decline to award Jill fees under RAP 18.9.

CONCLUSION

We reverse the award of attorney fees and remand for the court to determine whether to award fees under RCW 26.09.140 based on the full record. We otherwise affirm.

_Chung, J._

15

WE CONCUR: